**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Victoria Sister-Perez, | No. CV-20-02169-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff seeks judicial review of the Social Security Administration ("SSA") Commissioner's decision denying her application for SSA disability benefits. Plaintiff filed her Opening Brief (Doc. 16) on July 2, 2021. Defendant filed a Response Brief (Doc. 21) on October 21, 2021, and Plaintiff filed her Reply Brief (Doc. 24) on November 10, 2021. The Court has reviewed the briefs and the Administrative Record (Doc. 13-3, "R."). For the following reasons, the Court affirms the Administrative Law Judge's ("ALJ") decision.

## I.    Background

On October 23, 2017, Plaintiff protectively filed an application for a period of disability and disability benefits with an alleged onset date of October 1, 2016.[1] (R. at 13). An ALJ issued an unfavorable decision on April 9, 2020. (R. at 21). The Appeals Council denied Plaintiff's request for review. (R. at 1). This appeal followed.

Plaintiff claims several impairments to her ability to work. (R. at 16). The ALJ

---

[1] At her hearing, upon advice of her representative, Plaintiff amended her alleged onset date to August 17, 2017. (R. at 13).

found Plaintiff had the following severe impairments: multilevel spine degenerative disc disease/degenerative joint disease/spondylosis, fibromyalgia, and chronic pain syndrome. (*Id.*)  The ALJ found the following impairments were non-severe medically determinable impairments: fatty liver; Ehlers-Danlos Syndrome, Type III; bilateral TMJ; osteoarthritis; sleep disorder; hemangioma, status-post vertebroplasty; acute sinusitis; urethral stricture, not otherwise specified; urinary tract infection, not otherwise specified; irritable bowel syndrome; chronic fatigue.  (*Id.*)

During her symptom testimony Plaintiff represented that she experiences pain in her neck and shoulders.  (R. at 55).  She also testified that she has pain in her lower back, hips, knees, arms and stomach.  (R. at 55–56).  In addition, she testified that her chronic fatigue makes her "super tired" and that she could perform some house chores but had to lie down "four times" a day for about an hour each time.  (R. at 59).

The ALJ, citing to medical records, found Plaintiff's symptom testimony was "not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 18).  The ALJ concluded Plaintiff had the residual functional capacity "to perform the full range of light work."  (*Id.*)  Thus, the ALJ found Plaintiff "is capable of performing past relevant work as a case aide, teacher aide II, and childcare provider. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity."  (R. at 20).  The ALJ therefore determined Plaintiff was not disabled. (R. at 21).

Plaintiff raises two issues: whether the ALJ erred in rejecting Plaintiff's own symptom testimony, and whether the ALJ erred at step two of the sequential process when he found Plaintiff's diagnoses of chronic fatigue syndrome/myalgic encephalomyelitis ("CFS/ME") as non-severe impairments.  (Doc. 16 at 1).

## II.    Standard of Review

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).   The Court may set aside the Commissioner's disability

1   determination only if it is not supported by substantial evidence or is based on legal error.

2   *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence

3   that a reasonable person might accept as adequate to support a conclusion considering the

4   record as a whole.  *Id.*  To determine whether substantial evidence supports a decision, the

5   Court must consider the record as a whole and may not affirm simply by isolating a

6   "specific quantum of supporting evidence."  *Id.*  Generally, "[w]here the evidence is

7   susceptible to more than one rational interpretation, one of which supports the ALJ's

8   decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954

9   (9th Cir. 2002) (citations omitted).

10          To determine whether a claimant is disabled for purposes of the Act, the ALJ

11   follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of

12   proof on the first four steps, but the burden shifts to the Commissioner at step five.

13   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines

14   whether the claimant is presently engaging in substantial gainful activity.  20 C.F.R. §

15   404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe"

16   medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  At

17   step three, the ALJ considers whether the claimant's impairment or combination of

18   impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

19   of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically

20   found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's residual functional

21   capacity and determines whether the claimant is still capable of performing past relevant

22   work. 20 C.F.R. § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step,

23   where he determines whether the claimant can perform any other work in the national

24   economy based on the claimant's residual functional capacity, age, education, and work

25   experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines no such work is

26   available, the claimant is disabled.  *Id.*

27   **III.    Discussion**

28          The Court finds the ALJ did not err in rejecting Plaintiff's symptom testimony.  The

1   Court further finds the ALJ did not err at step two of the sequential process when he found

2   Plaintiff's CFS/ME as non-severe impairments.

3        **a. Plaintiff's Symptom Testimony**

4        Plaintiff argues the ALJ erred when he rejected Plaintiff's symptom testimony.

5   (Doc. 16 at 11).  When an ALJ evaluates a claimant's symptoms, he considers symptom

6   testimony, objective medical evidence, and other evidence in the record.  20 C.F.R. §

7   404.1529(c).  An ALJ "may not reject a claimant's subjective complaints based solely on

8   a lack of objective medical evidence to fully corroborate the alleged severity of pain."

9   *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(c)(2).

10  However, the ALJ may "reject the claimant's testimony about the severity of [the]

11  symptoms" provided that the ALJ also explains his decision "by providing specific, clear,

12  and convincing reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th

13  Cir. 2015).

14       Plaintiff first argues the ALJ committed a fundamental legal error in rejecting how

15  severe Plaintiff claimed her symptoms were.  (Doc. 16 at 13).  She argues "a claimant is

16  not required to provide medical evidence of the severity of those symptoms."  (*Id.* at 14).

17   Indeed, when a claimant produces medical evidence of an underlying impairment that is

18  reasonably likely to be the cause of the alleged pain, the law does not require a claimant to

19  provide medical findings that "support the severity of pain." *Bunnell v. Sullivan*, 947 F.2d

20  341, 343 (9th Cir. 1991).  However, the ALJ did not discredit Plaintiff's alleged severity

21  of pain because she failed to support her testimony with medical evidence.  To the contrary,

22  the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting

23  effects of these symptoms [were] not entirely consistent with the medical evidence and

24  other evidence in the record."  (R. at 18).  Under 20 C.F.R. § 416.929(a), an ALJ is required

25  to consider a claimant's symptoms "and the extent to which [the] symptoms can reasonably

26  be accepted as consistent with the objective medical evidence and other evidence" in the

27  record.  The ALJ thus found "given that she retains full strength, as well as a normal gait

28  and balance, the record supports that she can stand and/or walk for 6 hours in an 8-hour

workday and sit for 6 hours in an 8-hour workday." (R. at 19).

As to the medical evidence and other evidence, the ALJ cited to "[d]iagnostic images of [Paintiff's] thoracic, lumbar, and cervical spine, [which] revealed only mild abnormalities." (R. at 18). He further pointed to an MRI of Plaintiff's lumbar spine that "showed very mild circumferential disc bulging and partial disc desiccation . . . mild bilateral facet joint degenerative changes . . . and slight thoracolumbar dextroscoliosis." (*Id.*) He also cited to six records indicating Plaintiff had a normal gait and muscle strength, noting "while objective examinations revealed tenderness to palpation, and at times, positive straight leg raising and limited range of motion, providers also noted full strength, full sensation, normal balance, and normal gait without an assistive device." (*Id.* at 19). Finally, he discussed how Plaintiff "continues to actively manage her household, including helping her husband and son [and] that she socializes with family and friends, attends church, and even volunteers." (*Id.*) He noted elsewhere in the record that she took two unaccompanied trips to Spain in April of 2018 and in March of 2019 to visit family.[2] (*Id.* at 17). The ALJ thus concluded Plaintiff's "residual functional capacity [to perform the full range of light work], which is supported by the medical evidence of record . . . and consistent with the acknowledged activity level." (*Id.* at 20).

Plaintiff further argues the ALJ "did not show that [Plaintiff]'s routine activities were inconsistent with any particular symptoms [or] demonstrate that the cited daily activities were at odds with the severity of report symptoms." (Doc. 16 at 17-18). But the ALJ supported his activities findings with citations to reports from providers that "consistently noted she was in no acute distress and [she] received extremely conservative treatment in the form of medication management, including Norco, physical therapy, and

---

[2] The Court acknowledges a claimant's ability to carry out certain activities "does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001)). However, traveling abroad twice unaccompanied while claiming an inability "lift more than 10 pounds, stand more than 10 minutes, sit more than 20 minutes, and walk more than one block" was a valid reason for the ALJ to have found Plaintiff was not as limited as she alleged. *See e.g.*, *Romanelli v. Astrue*, 267 Fed. Appx. 722, 724 (9th Cir. 2008) (unpublished) (holding plaintiff's allegation that she was limited in standing to be inconsistent, in part, because she traveled to "the United Kingdom for two weeks").

steroid injections." (R. at 19).  The ALJ further cited to medical records from Dr. Robert Gordon, who opined Plaintiff "did not have any conditions that would have or would impose any limitations for 12 continuous months." (*Id.*)   The ALJ also expressly acknowledged and considered Plaintiff's "continued complaints of pain and evidence of treatment including narcotic medication and steroid injections." (*Id.*)  However, because Plaintiff retained "full strength, as well as a normal gait and balance," the ALJ found, "the record supports that she can stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday." (*Id.*)

For these reasons, the Court finds that the medical evidence presents clear and convincing reasons for finding Plaintiff "has the residual functional capacity to perform the full range of light work." (R. at 18).  Because substantial evidence supports the ALJ's findings, the Court finds the ALJ did not err by discounting Plaintiff's symptom testimony.

**b.  The ALJ's Step Two Sequential Evaluation Analysis of Plaintiff's Chronic Fatigue Syndrome/Myalgic Encephalomyelitis**

Plaintiff argues the ALJ erred at step two of the sequential evaluation process when he failed to determine that Plaintiff's chronic fatigue syndrome/myalgic encephalomyelitis was a severe impairment. (Doc. 16 at 19).  The Commissioner argues the step two findings are a de minimis screening to determine whether the sequential disability analysis should continue and, because it did here, the ALJ's error was harmless. (Doc. 21 at 11).

Step two includes "a de minimis screening device" for weeding out groundless claims.  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).  At step two, a claimant must establish the existence of a medically determinable impairment by objective medical evidence; a mere diagnosis, medical opinion, or statement of symptoms will not suffice.  20 C.F.R. §§ 404.1521, 416.921.  Once established, the ALJ then considers whether the impairment, individually or in combination with other impairments, is "severe" and expected to last more than twelve months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."

20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" are "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1522(b), 416.922(b).

Ninth Circuit law is unclear on how to evaluate claims of step-two error.  Some cases suggest that "although it is error for an ALJ to fail to characterize a particular impairment as 'severe' during step two, the error can be disregarded as harmless if the ALJ properly addresses the impairment during later steps."  *Sharp v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1043393, *3 (D. Ariz. 2019) (citations omitted).  Other opinions suggest "a claimant can't complain about an ALJ's failure to identify a particular impairment as 'severe' during step two so long as the ALJ determined the claimant also had other impairments that so qualify."  *Id.* (citations omitted).  The case law agrees, however, that "[t]he dispositive issue . . . is whether the ALJ properly evaluated the evidence and testimony concerning that condition during later steps and factored that condition into the RFC."  *Id.*

Here, the ALJ found Plaintiff had the following severe impairments: multilevel spine degenerative disc disease/degenerative joint disease/spondylosis, fibromyalgia, and chronic pain syndrome.  (R. at 16).  He found the following impairments non-severe: fatty liver; Ehlers-Danlos Syndrome, Type III; bilateral TMJ; osteoarthritis; sleep disorder; hemangioma, status-post vertebroplasty; acute sinusitis; urethral stricture, not otherwise specified; urinary tract infection, not otherwise specified; irritable bowel syndrome; chronic fatigue, not otherwise specified.  (*Id.*)  Although the ALJ found these impairments non-severe, he expressly stated "I considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity."  (R. at 16).  Thus, because the ALJ considered all the impairments, whether severe or non-severe, in determining Plaintiff's residual function capacity and because step two was decided in Plaintiff's favor, the Court finds any alleged error is harmless and cannot be the basis for a remand.  *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (finding the ALJ did not err at step two when he found plaintiff's antisocial personality disorder a non-severe impairment because the impairment was still considered

for plaintiff's RFC and step two was decided in Plaintiff's favor); *see also Sharp*, 2019 WL 1043393 at *3 (declining to find the ALJ erred in step two when he found plaintiff's atrial fibrillation a non-severe impairment because the dispositive issue was whether the ALJ considered the non-severe impairment when he evaluated plaintiff's RFC).

**IV.     Conclusion**

The Court finds the ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence.  The Court further finds the ALJ did not error at step two when he found Plaintiff's chronic fatigue syndrome/myalgic encephalomyelitis was a non-severe impairment because the ALJ properly considered the condition in assessing her residual functional capacity.  For these reasons, the Court finds that the ALJ did not err in his decision, which is based on substantial evidence.  *See Orn*, 495 F.3d at 630.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 8th day of March, 2022.

Honorable Diane J. Humetewa
United States District Judge